UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

SRC Strategic Resources Limited                    Chapter 15

      Debtor in a Foreign Proceeding.          Case No.: 22-12654-RAM

_____/

In re:

Bright Oriande Limited                             Chapter 15

      Debtor in a Foreign Proceeding.          Case No.: 22-12655-RAM

_____/

In re:

SRC International (Malaysia) Limited               Chapter 15

      Debtor in a Foreign Proceeding.          Case No.:  22-12656-RAM

_____/

**MOTION FOR ORDER GRANTING RECOGNITION OF FOREIGN MAIN
PROCEEDING PURSUANT TO §§ 1515 AND 1517 OF THE BANKRUPTCY CODE**

    Helen Janes, Angela Barkhouse, and Carl Jackson (the "JLs" or the "Foreign

Representatives"), the Joint Liquidators of SRC International (Malaysia) Limited ("SRC-BVI"),

Bright Oriande Limited ("BOL"), and SRC-Strategic Resources Limited ("SRC-Strategic")

(collectively the "Debtors"), file this *Motion for Order Granting Recognition of Foreign Main

Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code* (the "Motion").  The Motion

seeks entry of an Order granting (i) recognition, pursuant to 11 U.S.C. § 1517[1], of the Debtors'

_____

[1]  Unless otherwise specified herein, all statutory references shall be to Title 11 U.S.C. § 101 *et
seq.* (the "Bankruptcy Code").

voluntary liquidation proceeding (the "Debtors' Liquidation") pending in the British Virgin Island (the "BVI"); (ii) related relief pursuant to sections 1520 and 1521 of the Bankruptcy Code; and (iii) any other and further relief which may be available under the Bankruptcy Code. In support of the Motion, the Foreign Representatives respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Foreign Representatives filed the Chapter 15 Petition for Recognition of a Foreign Proceeding (the "Petition") pursuant to section 1504 seeking recognition of the Debtor's Liquidation as a "foreign main proceeding" as defined in section 1502(4) . D.E. 1.

2.      The Declaration of Helen Janes (the "Janes Declaration"), made under penalty of perjury, addressing the requirements of § 1515(c) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 1007(a)(4), is attached hereto as **Exhibit "A".**

3.      The Declaration of Andrew Emery (the "Emery Declaration"), made under penalty of perjury, regarding BVI law, is attached hereto as **Exhibit "B"**.

4.      The qualifying resolutions passed by the Debtors' respective members directing the wind up of the Debtors, commencing the Debtors' Liquidation, and appointing the Foreign Representatives as joint voluntary liquidators are attached to the Janes Declaration as **Composite Exhibit "1".**

5.      The Petition, this Motion, and the Declarations demonstrate that the Debtors' Liquidation should be recognized as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

6.      The Foreign Representatives seek the type of relief that Chapter 15 was designed to provide, and the Debtors' Liquidation, the Petition, and this Motion meet all the requirements for recognition and the requested relief.

2

## JURISDICTION AND VENUE

7.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and sections 109 and 1501 of the Bankruptcy Code.

8.     This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution.

9.     The British Virgin Islands is the Debtor's center of main interests as each of the Debtor's registered offices is located there.

10.     Venue is proper in this district under 28 U.S.C. § 1410.    The Foreign Representatives have retained Sequor Law, P.A. ("Sequor Law") in this district and Sequor Law holds in its trust account in this district the sum of US$ 1,500.00 on behalf of and for the benefit of the each Debtor (totaling US$ 4,500.00) to which funds Sequor Law has no rights of setoff, charging lien, or similar right.

## BACKGROUND

### A.    The Debtors and their Purported Business

11.     The Debtors were part of the fraud perpetrated against 1 Malaysia Development Berhad ("1MDB"), a sovereign wealth fund owned by the Malaysian Ministry of Finance, in which numerous entities and individuals formed a network to divert and distribute funds to the fraudsters who orchestrated the fraud and to individuals and/or entities connected to them ("the Fraud").  Ex. A at ¶ 5.  An estimated total of US$ 8.5 billion was diverted and/or siphoned off from 1MDB and SRC International Sdn Bhd ("SRC Malaysia").  *Id.*

12.     SRC Malaysia was incorporated in Malaysia as a wholly owned subsidiary of 1MDB in January 2011.  During 2011 and 2015, SRC Malaysia was repeatedly used as a conduit

3

for misappropriated funds as part of the wider Fraud. SRC Malaysia perpetrated the Fraud through its subsidiaries. *Id.* at ¶ 6.

13.    SRC-BVI is a wholly owned subsidiary of SRC Malaysia, incorporated and registered in the BVI on June 4, 2010. It has four subsidiaries, including BOL and SRC-Strategic. *Id.* at ¶ 7. The purported purpose of SRC-BVI was to receive funds from Kumpulan Wang Persaraan (Diperbadankan) ("KWAP")—a statutory body that manages the pension fund for public employees in Malaysia—and further distribute these funds to its subsidiaries. *Id.* It had no apparent business of its own. *Id.* Throughout its existence, SRC-BVI has principally been used by fraudsters to misappropriate funds through the establishment of various companies across the world and use of global banks. *Id.*

14.    BOL is a wholly owned subsidiary of SRC-BVI, it was incorporated in the BVI on February 5, 2015. *Id.* at ¶ 8. BOL likely had no legitimate business activity and was established for the sole purpose of diverting funds ultimately belonging to 1MBD and SRC Malaysia. *Id.* Importantly, at all relevant times, BOL's existence was concealed from the full Board of SRC-Malaysia. *Id.*

15.    SRC-Strategic was incorporated in the BVI under the name Aabar-SRC Strategic Resources Limited on October 25, 2011. *Id.* at ¶ 9. It was formed as a joint venture between SRC-BVI and Aabar-UAE, a subsidiary of an investment fund wholly owned by the government of Abu Dhabi, United Arab Emirates. *Id.* Its sole purpose appears to have been to hold shares in the BVI company Gobi Coal & Energy Limited ("Gobi Coal"), which purportedly owned mining rights in Mongolia. *Id.* The joint venture between SRC-BVI and Aabar-UAE terminated on April 22, 2017. *Id.* at ¶ 10. Aabar-UAE sold its 50% stake to SRC-BVI in exchange for 8.5 million shares in Gobi Coal. *Id.* As the sole owner of SRC-Strategic, SRC-BVI changed the name of SRC-Strategic to

SEQUOR LAW, P.A.

its present name.  *Id.*  SRC-Strategic's sole asset appears to be the shares, which are worth a fraction of what they were worth when bought.  *Id.*  As of the commencement of SRC-Strategic's liquidation, its sole shareholder was SRC-BVI.  *Id.*

## B.  **The SRC-BVI Transactions**

16.  In 2011 and 2012, KWAP approved two loan facilities to SRC Malaysia: the first loan in the amount of US$ 666,750,000 and the second for US$ 651,900,000.  *Id.* at ¶ 11.  Over $1 billion of these funds were transferred to bank accounts of SRC-BVI and US$ 60,000,000 to the account of its subsidiary SRC-Strategic.  *Id.* at ¶ 15.

### *i. The AMF Investment Frauds*

17.  SRC-BVI invested US$ 249,700,000 in three investment funds (the "AMF Funds") of a Cayman Islands segregated portfolio company Asia Momentum Fund (SPC).  *Id.* at ¶ 12.  The great majority of the investment vanished, however, due to a number of suspicious transactions.

18.  SRC-BVI requested major redemptions from the AMF Funds, including a redemption of approximately US$ 64 million; and then transferred US$ 56 million to BOL based on loan agreements that had no apparent business purpose and solely served to assist the misappropriation of the funds.  *Id.*  at ¶ 13.  Further, SRC-BVI paid significant management, advisory and service fees to various entities and individuals in connection with the investments in the AMF Funds. *Id.* at ¶ 14.

19.  Due to the above, the initial investment of approximately US$ 250 million had an end balance of US$ 17.6 million. *Id.* at ¶ 14. There are millions of dollars that are unaccounted for and that simply disappeared.  *Id.*  at ¶ 15.  The JLs believe that some of these funds may be in the US.  *Id.*

### *ii. Other Suspicious Transactions*

20.     During 2011 and 2014, SRC-BVI invested US$ 652,434,662 in exchange for shares in two other entities: Cistenique B.V. ("Cistenique") and Enterprise Emerging Market Funds ("Enterprise").  *Id.* at ¶ 16.  In February 2015, SRC-BVI directed the custodial bank to transfer these holdings to itself and it is unknown where the shares were transferred to.  *Id.*  In December 2015, SRC-BVI requested the redemption of shares held on SRC-BVI's behalf to be transferred to BOL.  *Id.*  The JLs have not found any evidence of any transfers to BOL in relation to the purported redemptions.  *Id.*

21.     In February 2016, Cistenique and Enterprise responded to SRC-BVI's redemption requests with six identical assignment agreements.  *Id.* at ¶17.  These documents were "Notices of Assignment" stating that promissory notes allegedly issued by Aabar Investments PJS Ltd. ("Aabar Samoa") to BVI incorporated companies were assigned to BOL.  *Id.*  Each Notice was signed by BOL as assignee to Aabar Samoa and SRC-BVI.  *Id.*  The total debt purportedly assigned to BOL was US$ 652,434,662, the same amount invested by SRC-BVI in Cistenique and Enterprise.  *Id.*  The BVI companies that were the beneficiary of the purported assigned notes dissolved in 2017.  *Id.*  The JLs believe that the funds derived from the redemptions either were transferred to one of the fraud conspirators in exchange for the fraudulent promissory notes, or alternatively, the documentation described above is a false paper trail to "account" for funds which were fraudulently transferred out of Cistenique and Enterprise.  *Id.* at ¶ 18.  In either instance, BOL and Aabar Samoa would be involved in a wider scheme of transactions to transfer misappropriated funds, and these funds may have been dissipated to the US as part of this scheme.  *Id.*

**C.**     **Transactions Involving BOL**

22.     During May and December 2015, BOL transferred about US$ 53,000,000 to the account of Aabar Samoa, although BOL does not have records relating to these transfers.  *Id.* at ¶

SEQUOR LAW, P.A.

20.  The JLs believe that the records obtained from BOL's bank, Amicorp Bank, supporting the transfers are false and intend to cover the misappropriation of funds.  *Id.*

### D.    Transactions Involving SRC Strategic

23.    During late 2011 and early 2012, SRC Strategic acquired 17 million shares in Gobi Coal for approximately US$ 110 million in advance of a planned initial public offering ("IPO") in 2012 for US$ 110,500,000.[2]  *Id.* at ¶ 21.  Over time the shareholding has been diluted, and is likely to be further diluted due to proposed restructuring by the beneficial owner of Gobi Coal, a U.S. national.  *Id.* at ¶ 22.  The JLs suspect that the funds SRC-BVI used to purchase these shares originally came from KWAP and that the funds were dissipated by participants of the Fraud, some of which operate from the U.S.  *Id.*  SRC Strategic's sole asset appears to be its shares in Gobi Coal, which are worth a fraction of what they were worth when acquired.  *Id.* at ¶ 23.  The JLs intend to continue their investigations in the United States and seek information from a number of individuals and entities to understand what happened to the funds invested in Gobi Coal.  *Id.*

### E.    Lead Up to the Debtors' Liquidation in the BVI

24.    In 2013 and 2014, the media covered activities of 1MDB, including its connection with SRC Malaysia and SRC-BVI.  *Id.* at ¶24.  In 2015, the international press began to report about 1MDB and SRC Malaysia being under international investigation due to allegations of fraud and money laundering.  *Id.*  Until 2016, most investigation attempts in Malaysia were thwarted by the Malaysian government, as the Prime Minister of Malaysia, Mohb Najib bin Hj Abdul Razak ("Najib"), was the main force behind the creation of 1MDB.  *Id.*

25.    In 2018, Najib was removed as Prime Minister and Malaysian authorities began to investigate the Fraud.  *Id.* at ¶ 25.  Najib and other co-conspirators were subject to criminal and

---

[2]  The liquidators have found no evidence that the IPO ever occurred.

SEQUOR LAW, P.A.

civil proceedings related to the misappropriation of 1MDB funds in Malaysia and abroad. Malaysian authorities sought cooperation from global law enforcement, including the United States Department of Justice (the "DOJ"), which actively investigated and seized some assets in relation to the Fraud since 2016 onwards.[3]  *Id.*  However, based on the review of the public records, the DOJ only appears to have focused on 1MDB and not on SRC Malaysia, despite it also losing US$ 1,150,000,000.  *Id.*

26.     Civil proceedings have been brought by the JLs and related companies in multiple jurisdictions to recover assets and claim damages.  *Id.* at ¶ 26.  The liquidation of the Debtors forms part of an international effort to trace and recover funds misappropriated through SRC Malaysia.  *Id.*

**F.      The Debtors' Liquidation**

27.     In July and August of 2021, the Debtors' liquidation commenced pursuant to the BVI's Insolvency Act, 2003 (the "Insolvency Act") as part of the global asset recovery efforts. Ex. A at ¶ 27 & Comp. Ex. 1. Since their appointment, the JLs have managed the affairs, business, and property of the Debtors in order to achieve an orderly wind-down and facilitate the recovery of assets for the benefit of creditors.  Ex. A at ¶ 32 & Comp. Ex. 1.  Actions that the JLs may take or are taking include but are not limited to: (i) continuing business as usual for trading operations (but, for the avoidance of doubt, not the origination of new business), obligor receipts, and payments to SRC-BVI as principal, where appropriate arrangements are put in place; (ii) agreeing and finalizing the form of support with investors to recover costs incurred in connection with SRC-BVI's continuing efforts to assist with recovery of assets; (iii) dealing with any defaulting obligors

---

[3] As part of its efforts, the DOJ brought actions against Jho Lo Riza Aziz, AL Qubaisi, Al Husseiny and Goldman Sachs, for their roles in the Fraud.  The JLs suspect that despite these efforts, there are companies and trusts that are yet to be uncovered related to the Fraud.

and taking steps to protect the position of the Debtors or investors; (iv) continuing assistance with subsidiaries to wind up or facilitate a sales process, as applicable, and realize value where possible; (v) continuing to liaise with agents regarding the disposal of remaining assets; (vi) paying liquidation expenses; (vii) agreeing on the claims of the unsecured and preferential creditors and payment of a dividend, if future realizations make this feasible; (viii) paying distributions to the secured creditors of the Debtors; (ix) finalizing the Debtors' tax affairs, including completion of corporation tax and VAT returns and settlement of any post liquidation liabilities; and (x) complying with statutory and regulatory obligations, including investigations. *Id.*

28.     The JLs have identified various individuals and entities located in the United States who either participated or otherwise possess knowledge relating to the above transactions.  The JLs also believe that part of the Debtors' missing funds are located in the United States as some of the missing funds passed through US entities, including investment managers, fund managers and other US entities who provided services to the participants in the Fraud.  Accordingly, the JLs file this Chapter 15 to (i) obtain information from these third parties and continue their investigations on the loss and misappropriation of the Debtors' funds, and (ii) to the extent they localize any assets, take control and liquidate the same for the benefit of the Debtors' estates.

## RELIEF REQUESTED

29.     By this Motion, the JLs respectfully request an Order pursuant to sections 105(a), 1507, 1517, 1520 and 1521 of the Bankruptcy Code, substantially in the form of the Proposed Order, attached hereto as **Exhibit "C"**, granting the following relief:

(a)     Recognizing the Debtors' Liquidation as a "foreign main proceeding" and the JLs as the Foreign Representatives of the Debtor;

(b)     Granting the relief allowable as of right upon recognition of a foreign main

proceeding under section 1520 of the Bankruptcy Code;

      (c)      Granting the following additional relief under section 1521 of the Bankruptcy Code:

      (1)      staying the commencement or continuation of any action or proceeding without the consent of the Foreign Representative concerning the rights, obligations or liabilities of the Debtor, the Debtor's estate to the extent not stayed under section 1520(a) of the Bankruptcy Code;

      (2)      staying execution against the Debtor to the extent not stayed under § 1520(a);

      (3)      suspending the right to transfer or otherwise dispose of any assets of the Debtor to the extent this right has not been suspended under section 1520(a);

      (4)      providing for the examination of witnesses, the taking of evidence, and the delivery of information concerning the assets, affairs, rights, obligations or liability of the Debtor and the Debtor's estate under § 1521(a)(4), the Federal Rules of Bankruptcy Procedure, including Fed. R. Bankr. P. 2004, and Local Rule 2004-1;

      (5)      entrusting the administration or realization of all of the assets of the Debtors within the territorial jurisdiction of the United States to the Foreign Representatives;

      (6)      entrusting the distribution of all or part of the assets of the Debtors located within the United States to the Foreign Representatives;

      (7)      should the Debtors' Liquidation be subject to the supervision of a BVI court, granting comity to and giving full force and effect to any Order entered by the BVI Court; and

      (d)      granting the Foreign Representatives such other and further relief as this Court may deem just and proper.

SEQUOR LAW, P.A.

## BASIS FOR RECOGNITION

30.     The Foreign Representatives have satisfied each of the requirements for recognition set forth in section 1517 of the Bankruptcy Code because (i) the Debtors' Liquidation is a foreign main proceeding, (ii) the JLs filing the Petition and this Motion are foreign representatives under section 101(24), and (iii) the procedural requirements of section 1515 and Bankruptcy Rule 1007 are satisfied.

### A.     The Debtors' Liquidation is a Foreign Main Proceeding Under Section 1502

31.     The Debtors' Liquidation qualifies as a "foreign proceeding" under section 101(23) of the Bankruptcy Code as it is a proceeding pending in the BVI pursuant to the BVI's Insolvency Act.

32.     As discussed in the Emery Declaration, the Insolvency Act establishes a framework for controlled, court-supervised and collective reorganization and restructuring of obligations of distressed companies.  Ex. B, at ¶ 4.  Under the Insolvency Act, a liquidator, whether appointed by members' resolution or by the BVI Court, acts as an officer of the BVI court and as an agent for the company.  *Id.* at ¶ 5.  A liquidator has the duties and powers set out in the Insolvency Act and such duties and powers as the BVI court may order under section 185 and 186 of the Insolvency Act, and may apply to the BVI court at any time for directions.  *Id.*

33.     The purpose of a liquidation under the Insolvency Act is to realize the assets of the company, declare a dividend for creditors and to return the surplus to the members of the debtor. *Id.* at ¶ 6.  It can be terminated when the liquidators, after completing their duties, prepare a final report together with a statement of realizations and distributions for the creditors and members. *Id.*  Liquidation can also be terminated by the court, on an application by a liquidator, a creditor, director or member, if the court considers it equitable to do so.  *Id.*  The final step after liquidation

11

is the dissolution of the company, after which the company ceases to exist, and no one can act on behalf of the company. *Id.* The debts and obligations of the company are therefore extinguished. *Id.*

34.     Further, Bankruptcy Courts (including this Court) have held that liquidations in the BVI under the Insolvency Act (and related BVI insolvency law) constitute "foreign proceedings." *See, e.g.*, *Exential Investments, Inc.*, Case No. 21-15203-RAM, ECF No. 6 (Bankr. S.D. Fla. June 30, 2021) (granting foreign main recognition to a BVI liquidation under the Insolvency Act); *In re Olinda Star Ltd.*, 614 B.R. 28, 40-41 (Bankr. S.D.N.Y. 2020) (granting recognition to provisional liquidation in the BVI as foreign proceeding); *In re Fairfield Sentry Ltd.*, 440 B.R. 60, 66 (Bankr. S.D.N.Y. 2010) (same).

35.     The Debtors' Liquidation further qualifies as a "foreign main proceeding" under section 1502. First, the Debtors' Liquidation is a foreign proceeding pending in the BVI, where the Debtor's registered office is located. See 11 U.S.C. § 1516(c) ("In the absence of evidence to the contrary, the debtor's registered office … is presumed to be the center of the debtor's main interests."). Second, the Debtors' only remaining economic activity is centered in the BVI. Since their appointment as joint liquidators, the JLs engaged in significant tasks in the BVI in connection to the Debtor's liquidation, such as (i) administration of the Debtors' affairs, business and property, effectively replacing the Debtors' directors; (ii) sending relevant notices to relevant parties in interest; and (iii) providing notice by publication of the Debtor's liquidation, their appointment, and the ability to submit claims in BVI newspapers and newspapers of other jurisdictions where potential claimants may receive notice. Moreover, as the Debtors are BVI entities under liquidation under the BVI Insolvency Act, and BVI law is the jurisdiction whose law would apply to most disputes arising from the Debtors' operations, the BVI is the natural jurisdiction that would

be ascertainable by third parties as the Debtors' center of main interests. *See Servicios de Petroleo Constellation S.A.*, 600 B.R. 237, 272 (Bankr. S.D.N.Y. 2019) (considering the following factors in assessing the debtor's COMI: the location of the debtor's headquarters, of those who manage the debtor, the jurisdiction of whose law would apply to most disputes, and the expectations of third parties as to the debtor's COMI).

**B.    The JLs are Foreign Representatives Under Section 101(24)**

36.    The JLs qualify as "foreign representatives" under section 101(24) of the Bankruptcy Code by virtue of their appointment as joint liquidators by the Debtors' members through a qualifying resolution in accordance with BVI's Insolvency Act, 2003. The resolution also authorizes the JLs to act as the foreign representatives of the Debtors' Liquidations and to commence the Debtors' Chapter 15 cases. As joint liquidators, the Foreign Representatives have the power to, among other things, (i) administer the reorganization of the Debtors' assets and affairs and run the Debtors' businesses during the course of the Debtors' Liquidation; (ii) to take possession of, protect and realise the Debtors' assets; and (iii) to distribute the assets or the proceeds of realisation of the assets in accordance with the provisions of the Insolvency Act.

**C.    The Debtors' Liquidation Meets the Procedural Requirements of Section 1515**

37.    As stated above, the requirements of section 1515 are satisfied as the members' qualifying resolutions appointing the JLs and commencing the wind up of the Debtors is attached to the Janes Declaration as Composite Exhibit 1.

38.    Further, the statements required by section 1515(c) of the Bankruptcy Code and Fed. R. Bankr. P. 1007(a)(4) are included in the attached Janes Declaration.

39.    Finally, the JLs submit that section 109(a) of the Bankruptcy Code does not apply herein. To the extent section 109(a) of the Bankruptcy Code applies in Chapter 15 cases, the

Debtors qualifies as "debtors" under section 109(a) because the Debtors have assets in the United

States in the form of monies held on their behalf with Sequor Law.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court enter an Order granting the

relief requested herein and such other and further relief as the Court deems just and proper.

Dated: April 5, 2022

<div style="margin-left: 40%;">

Respectfully submitted,

SEQUOR LAW, P.A.
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
Email: ggrossman@sequorlaw.com
       jmendoza@sequorlaw.com
       jmosquera@sequorlaw.com

By:   */s/ Gregory S. Grossman*
      Gregory S. Grossman
      Florida Bar No. 896667
      Juan J. Mendoza
      Florida Bar No.: 113587
      Jennifer Mosquera
      Florida Bar No.: 1018656

</div>

F:\WDOX\CLIENTS\60165\1001\00343425.DOCX

*EXHIBIT "A"*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

SRC International (Malaysia) Limited                    Chapter 15

Debtor in a Foreign Proceeding.                         Case No.:  22-12656-RAM
_____/

In re:

Bright Oriande Limited                                 Chapter 15

Debtor in a Foreign Proceeding.                        Case No.: 22-12655-RAM
_____/

In re:

SRC Strategic Resources Limited                        Chapter 15

Debtor in a Foreign Proceeding.                        Case No.: 22-12654-RAM
_____/

**DECLARATION OF HELEN JANES IN SUPPORT OF CHAPTER 15**
**PETITION FOR RECOGNITION OF FOREIGN PROCEEDINGS**

I, Helen Janes, Group Head of Finance of Hyperion Risk Solutions Limited (BVI), hereby

declare under penalty of perjury under the laws of the United States as follows:

1.      I am a joint liquidator and foreign representative of SRC International Malaysia

Limited ("SRC-BVI"), Bright Oriande Limited ("BOL") and SRC Strategic Resources Limited

("SRC-Strategic") (collectively, the "Debtors").

2.      I am over the age of 18 and I am duly authorized to make this declaration acting in

my capacity as joint liquidator of the Debtors.  Where the matters stated in this declaration are

statements of fact that are within my personal knowledge, they are true.  Where the matters stated

1

in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information obtained through the joint liquidators' investigations (as described below) and are true to the best of my knowledge, information, and belief.  If called upon, I could testify as to all matters set forth in this declaration.

3.    The Debtors are in liquidation under the laws of the British Virgin Islands (the "BVI") pursuant to Section 159(2) of the Insolvency Act 2003 (the "BVI Insolvency Act") of the British Virgin Islands.  I make this Declaration in support of the *Motion for Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code* (the "Motion") seeking recognition of the voluntary liquidation of the Debtors under Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code").

4.    The Debtors were placed into voluntary liquidation in July and August 2021[1] by qualifying resolutions passed by their respective members, resolving for the (i) the wind-up of the Debtors; and (ii) appointment of Angela Barkhouse, Carl Jackson, and me as joint liquidators (the "JLs").  The resolutions are attached hereto as **Composite Exhibit "1"**.

## THE DEBTORS AND THEIR LIQUIDATION

### A.    The Debtors and their Purported Business

5.    The Debtors were part of the fraud perpetrated against 1 Malaysia Development Berhad ("1MDB"), a sovereign wealth fund owned by the Malaysian Ministry of Finance, in which numerous entities and individuals formed part of a network to divert and distribute funds to the fraudsters who orchestrated the fraud and to individuals and/or entities connected to them ("the

---

[1]  The Joint Liquidators were appointed on August 11, 2021 for SRC-BVI and on July 2, 2021 for BOL and SRC-Strategic.  See Comp. Ex. 1.

Fraud"). An estimated total of US\$ 8.5 billion was diverted and/or siphoned off from 1MDB and SRC International Sdn Bhd ("SRC Malaysia").

6.     SRC Malaysia was incorporated in Malaysia as a wholly owned subsidiary of 1MDB on January 7, 2011. Its purported purpose was to identify and invest in projects associated with the exploration, extraction, processing and trading of energy resources, natural resources, and minerals. During 2011 and 2015, however, SRC Malaysia was repeatedly used as a conduit to misappropriate funds as part of the wider Fraud. SRC Malaysia perpetrated the Fraud through its subsidiaries.

7.     SRC-BVI is a wholly owned subsidiary of SRC Malaysia, incorporated and registered in the BVI on June 4, 2010. It has four subsidiaries, including Debtors BOL and SRC-Strategic. The purported purpose of SRC-BVI was to receive funds from Kumpulan Wang Persaraan (Diperbadankan) ("KWAP")—a statutory body that manages the pension fund for public employees in Malaysia—and to distribute these funds to its subsidiaries. SRC-BVI had no apparent business of its own. The board minutes of SRC Malaysia set out that SRC-BVI was established to facilitate the international investments of SRC Malaysia. However, throughout its existence, SRC-BVI has principally been used by the fraudsters to misappropriate funds through the establishment of various companies across the world and use of global banks.

8.     BOL is a wholly owned subsidiary of SRC-BVI, it was incorporated in the BVI on February 5, 2015. BOL's purported purpose was to be an investment holding company. However, the JLs believe that BOL had no legitimate business activity and was established for the sole purpose of diverting funds ultimately belonging to 1MBD and SRC Malaysia. Importantly, at all relevant times, BOL's existence was concealed from the full Board of SRC-Malaysia.

9.      SRC-Strategic was incorporated in the BVI under the name Aabar-SRC Strategic Resources Limited on October 25, 2011.  It was formed as a joint venture between SRC-BVI and Aabar-UAE, a subsidiary of an investment fund wholly owned by the government of Abu Dhabi, United Arab Emirates.  Its primary objective was to invest in projects associated with the exploration, extraction, processing, logistics and trading of conventional and renewable energy resources, natural resources and mineral and other related activities and other investments. However, its sole purpose appears to have been to hold shares in the BVI company Gobi Coal & Energy Limited ("Gobi Coal"), which purportedly owned mining rights in Mongolia.

10.      The joint venture between SRC-BVI and Aabar-UAE terminated on April 22, 2017. SRC-Strategic's sole asset appears to be the shares, which are worth a fraction of what they were worth when bought.  As of the commencement of SRC-Strategic's liquidation, its sole shareholder was SRC-BVI.

B.      **The SRC-BVI Transactions**

11.      In 2011 and 2012, KWAP approved two loan facilities to SRC Malaysia: the first loan in the amount of US$ 666,750,000 and the second for US$ 651,900,000.  Over US$ 1 billion of these funds were then transferred to SRC-BVI's bank accounts at Bank Julius Baer & Co. and Falcon Bank in Hong Kong and to BSI Bank in Lugano, Switzerland.  SRC Malaysia also transferred US$ 60,000,000 to the account of its subsidiary SRC-Strategic.

*i.      The AMF Funds Investments*

12.      SRC-BVI invested US$ 249,700,000 in three funds of the segregated portfolio company Asia Momentum Fund (SPC): Asia Momentum Fund A, Asia Momentum Fund B and Asia Momentum Fund C (collectively, the "AMF Funds").

13.     Significant redemptions were made from the AMF Funds, including one for US$ 64,305,716 to the account of SRC-BVI at Julius Baer, which then transferred 56,499,955 to the account of its subsidiary BOL at Amicorp Bank in Barbados.  This transfer was made based on loan agreements without notice to the SRC Malaysia Board.  I believe that the loan agreements had no legitimate business function and served solely to perpetuate the misappropriation of funds.  There is no evidence of repayment.  The funds may have been dissipated in the US.

14.     Though SRC-BVI transferred approximately US$ 250,000,000 to the AMF Funds, despite significant advisory, management and administrative fees, the AMF Funds only had an end balance of US$ 17,600,000.

15.     The JLs believe that the funds were managed fraudulently (or at the very least negligently) based on the funds' poor performance and significant management fees paid to various entities and individuals.  There are millions of dollars that are unaccounted for and their disappearance is being investigated.  The JLs suspect that some of these missing funds may be in the US.

### ii. Other Suspicious Transactions

16.     During 2011 and 2014, SRC-BVI invested US$ 652,434,662 in exchange for shares in two other entities: Cistenique B.V. ("Cistenique") and Enterprise Emerging Market Funds ("Enterprise").  BSI Bank Limited Singapore (a subsidiary of BSI Bank) was the custodian of the shares.  In February 2015, SRC-BVI directed BSI Singapore to transfer these holdings to itself.  It is not known where the shares were transferred to.  Then, in December 2015, SRC-BVI requested the redemption of its shares and that the resulting funds be transferred to BOL.  The JLs have not found any evidence of any transfers to BOL in relation to the purported redemptions.

17.     In February 2016, Cistenique and Enterprise responded to SRC-BVI's requests with six identical assignment agreements.  These documents were "Notices of Assignment" stating that promissory notes allegedly issued by Aabar Investments PJS Ltd. ("Aabar Samoa") to BVI incorporated companies had been assigned to BOL.  Each Notice was signed by BOL as assignee to Aabar Samoa and SRC-BVI.  The total debt purportedly assigned to BOL was US\$ 652,434,662, the same amount invested by SRC-BVI in Cistenique and Enterprise.  The BVI companies that were the beneficiary of the purported assigned notes dissolved in 2017.

18.     It is likely that either (i) the funds derived from the redemptions were transferred to one of the fraud conspirators in exchange for the fraudulent promissory notes, or alternatively, (ii) the documentation described above is a false paper trail to "account" for funds which were fraudulently transferred out of Cistenique and Enterprise.  In either instance, the JLs believe that BOL and Aabar Samoa are involved in a wider scheme of transactions to transfer misappropriated funds, and that funds may have been dissipated to the US as part of this scheme.

## C.    <u>Transactions Involving BOL</u>

19.     The JLs intend to investigate the circumstances regarding the transfers totaling US\$ 56,499,955 from SRC-BVI to BOL, as well as the "loan agreements" related to these transfers, as the JLs do not possess information regarding the location of these funds.

20.     Further, during May and December 2015, BOL made various transfers, totaling approximately US\$ 53,000,000, to the account of Aabar Samoa.  However, BOL does not have records relating to the above transfers.  The JLs believe that the records obtained from BOL's bank, Amicorp Bank, supporting the transfers are false and intend to cover the misappropriation of funds.  The JLs do not possess information regarding the location of these funds.

**D.**    **Transactions Regarding SRC Strategic**

21.    During late 2011 and early 2012, SRC Strategic acquired 17 million shares in Gobi Coal for approximately US$ 110 million in advance of a planned initial public offering ("IPO") in 2012 for US$ 110,500,000.[2]  The joint ownership of SRC Strategic by SRC-BVI and Aabar-UAE ended on April 22, 2017.  Aabar-UAE sold its 50% stake in SRC Strategic to SRC-BVI in exchange for 8.5 million shares in Gobi Coal, making SRC-BVI the sole owner of SRC Strategic.

22.    Over time Gobi Coal's shareholding significantly diluted.  Though the 8.5 million shares held by SRC Strategic (after the sale of Aabar-UAE's interest to SRC-BVI) equated to almost 9% holding at the time of purchase, now it is less than 3%, and is likely to be further diluted due to proposed restructuring by the beneficial owner of Gobi Coal, a U.S. national.  The JLs suspect that the funds SRC-BVI used to purchase these shares originally came from KWAP and that the funds were dissipated by participants of the Fraud, some of which operate in the U.S.

23.    SRC Strategic's sole asset appears to be its shares in Gobi Coal, which are worth a fraction of what they were worth when acquired.  The JLs intend to continue their investigations in the United States and intend to seek information from a number of individuals and entities to understand what happened to the funds invested in Gobi Coal.

**E.**    **Lead Up to the Debtors' Liquidation in the BVI**

24.    In 2013 and 2014, the media covered activities of 1MDB, including its connection with SRC Malaysia and SRC-BVI.  In 2015, the international press began reporting that 1MDB and SRC Malaysia were under international investigation due to allegations of fraud and money laundering.  Until 2016, most investigation attempts in Malaysia were thwarted by the Malaysian

---

[2]  The liquidators have found no evidence that the IPO ever occurred.

government, as the Prime Minister of Malaysia, Mohb Najib bin Hj Abdul Razak ("Najib"), was the main force behind the creation of 1MDB.

25.     In 2018, Najib was removed as Prime Minister and Malaysian authorities began to investigate the Fraud.   Najib and other co-conspirators were subject to criminal and civil proceedings related to the misappropriation of 1MDB funds in Malaysia and abroad.   Malaysian authorities sought cooperation from global law enforcement, including the United States Department of Justice (the "DOJ"), which actively investigated and seized some assets in relation to the Fraud since 2016 onwards.[3]   However, based on the review of the public records, the DOJ only appears to have focused its efforts on 1MDB and not on SRC Malaysia, despite it losing US$ 1,150,000,000.

26.     Civil proceedings have been brought by the JLs and companies related to the Debtors in multiple jurisdictions to recover assets and claim damages.   While the general details of the Fraud have been widely reported on, the full extent of the Fraud is unknown.   The liquidation of the Debtors forms part of an international effort to trace and recover funds misappropriated through SRC Malaysia.

**F.      The Debtors' Liquidation**

27.     In July and August of 2021, the Debtors were placed into voluntary liquidation pursuant to the BVI's Insolvency Act 2003 as part of the global asset recovery efforts (the "BVI Liquidation").  Comp. Ex. 1.  Since their appointment, the JLs have been conducting the Debtors' activities out of the UK, Cayman, and BVI.

---

[3] As part of its efforts, the DOJ brought actions against Jho Lo Riza Aziz, AL Qubaisi, Al Husseiny and Goldman Sachs, for their roles in the Fraud.  The JLs suspect that despite these efforts, there are companies and trusts that are yet to be uncovered related to the Fraud.

28.     The Insolvency Act authorizes the Debtors to administer their assets and affairs and run their businesses during the course of the BVI Liquidation.  Once a liquidation commences, the liquidator is an officer of the BVI Court and subject to the supervision of that Court.  A liquidator has the power to take possession of, protect and realise the assets of the debtor and distribute the assets or the proceeds of realisation of the assets in accordance with the provisions of the Insolvency Act.

29.     The JLs provided notice by publication of the BVI Liquidation and their appointment and invited creditors to submit claims in the BVI liquidation.  The JLs published notice in the BVI Government Gazette and the BVI Beacon newspaper.  The JLs also filed with the BVI Registrar of Companies and served on the company's registered agents.

30.     To the best of the JLs' knowledge and belief, this is the most appropriate jurisdictions to notify to ensure that the knowledge of the BVI Liquidation reaches all potential creditors of the Debtors.

31.     Since their appointment, the JLs have taken a number of steps to identify, secure and take into their possession and control the assets and records of the Debtors.

32.     Upon their appointment, the JLs have also managed the affairs, business, and property of the Debtors in order to achieve an orderly wind-down and facilitate the recovery of assets for the benefit of creditors.  Actions that the JLs may take or are taking include but are not limited to: (i) continuing business as usual for trading operations (but, for the avoidance of doubt, not the origination of new business), obligor receipts, and payments to SRC-BVI as principal, where appropriate arrangements are put in place; (ii) agreeing and finalizing the form of support with investors to recover costs incurred in connection with SRC-BVI's continuing efforts to assist with recovery of assets; (iii) dealing with any defaulting obligors and taking steps to protect the

position of the Debtors or investors; (iv) continuing assistance with subsidiaries to wind up or facilitate a sales process, as applicable, and realize value where possible; (v) continuing to liaise with agents regarding the disposal of remaining assets; (vi) paying liquidation expenses; (vii) agreeing on the claims of the unsecured and preferential creditors and payment of a dividend, if future realizations make this feasible; (viii) paying distributions to the secured creditors of the Debtors; (ix) finalizing the Debtors' tax affairs, including completion of corporation tax and VAT returns and settlement of any post liquidation liabilities; and (x) complying with statutory and regulatory obligations, including investigations.

### Basis for Recognition Under Chapter 15 of the Bankruptcy Code

33.    The JLs continue to investigate the Debtors' business activities and are taking steps to pursue various leads to localize and realize potential asset recovery opportunities for the benefit of all creditors.  As parts of these efforts the JLs seek recognition of the Debtors' Liquidation in the United States to obtain discovery relating to transactions involving the Debtors to assist in the tracing of estate assets and, to the extent necessary, other entities relating to the Debtors.

### Rule 1007(a)(4) Disclosures

34.    I hereby provide the following information in accordance with Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

    a.  I am not aware of any foreign proceedings, as that term is defined in 11 U.S.C. § 101(23), of the Debtors other than this Chapter 15 filing.

    b.  Helen Janes of Hyperion Risk Solutions (BVI), Angela Barkhouse of Quantuma (Cayman) Limited, and Carl Jackson of Quantuma Advisory (UK) have been appointed as the joint liquidators of the Debtors by a members' qualifying resolution.

10

i.   The address of the JLs is the following:

Attn: Helen Janes
Hyperion Risk Solutions (BVI)
The Folio Building
Road Town, Tortola VG1110
British Virgin Islands

Attn: Angela Barkhouse
10 Market St,  #1174 Camana Bay
Grand Cayman KY1-9006
Cayman Islands

Attn: Carl Jackson
Quantuma Advisory (UK)
Office D, Beresford House, Town Quay
Southampton SO14 2AQ
United Kingdom

ii.   For purposes of this Chapter 15 proceeding, the JLs requests that any

correspondence be sent, in addition to the address provided above, to:

Attn: Gregory S. Grossman
Juan J. Mendoza
Jennifer Mosquera
Sequor Law, P.A.
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131

c.   The Debtors are not party to any litigation in the United States.

d.   I do not seek provisional relief, under 11 U.S.C. § 1519, against any person or entity

at this time.

[Verification on next page]

11

## 28 U.S.C. § 1746 VERIFICATION

I, Helen Janes, declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that I have the authority to make this Declaration; that I have read the foregoing Declaration; and that the facts and matters alleged and contained herein are true and correct to the best of my knowledge and belief, based upon my own personal knowledge of the facts involved and upon my review of the available documents pertaining to SRC-BVI, BOL, and SRC-Strategic.

Executed in Road Town, Tortola, British Virgin Islands, on April 4, 2022

By: _____
    Helen Janes

F:\WDOX\CLIENTS\60165\1001\00343063.DOCX

*EXHIBIT "1"*

*PRIVILEGED & CONFIDENTIAL*

**SRC INTERNATIONAL (MALAYSIA) LIMITED (the "Company")**
**BC # 1588314**

<u>**WRITTEN RESOLUTIONS OF THE MEMBER OF THE COMPANY**</u>

It was noted that on 24 June 2021, the Directors of the Company have recommended that the Member of the Company should resolve to place the Company into liquidation, pursuant to Sections 159(2) and 161 of the Insolvency Act 2003, and appoint Angela Barkhouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 149 Seafarers Way, George Town, Grand Cayman, Cayman Islands, Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom and Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG1110 to act as Joint Liquidators of the Company.

The following resolutions are passed as **RESOLUTIONS** of the voting member of the Company:

**THAT** consent is given that these resolutions may be passed as written resolutions without notice.

**THAT** it has been proved to the satisfaction of the member of the Company that the Company cannot, by reason of its liabilities, continue its business, and that the Company be placed into Liquidation.

The following resolution is passed as a **QUALIFYING RESOLUTION** of 75% or more of the voting members of the Company:

**THAT** pursuant to Section 159(2) of the Insolvency Act 2003 (as amended), Angela Barkhouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 149 Seafarers Way, George Town, Grand Cayman, Cayman Islands, Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom and Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG1110, be appointed as Joint Liquidators of the Company.

Amiruddin Bin Muhamed
Duly authorized Director
Dated this 11th day of August 2021

*PRIVILEGED & CONFIDENTIAL*

**SRC INTERNATIONAL (MALAYSIA) LIMITED (the "Company")**
**BC # 1588314**

<u>**NOTICE OF LIQUIDATORS' APPOINTMENT**</u>

We, the Directors of the Company, incorporated on 4 June 2010, pursuant to the Section 161(2) of the Insolvency Act 2003 (as amended) (the **"Act"**), hereby notify you Angela Barkhouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 149 Seafarers Way, George Town, Grand Cayman, Cayman Islands, Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom and Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG1110 that you were appointed as a Joint Liquidators of the Company pursuant to a member's qualifying resolution dated 24 June 2021 pursuant to Section 159(2) of the Act.

Declared this 11th day of August 2021

_____
Amiruddin Bin Muhamed
Director

*PRIVILEGED & CONFIDENTIAL*

**SRC STRATEGIC RESOURCES LTD (the "Company")**
**BC # 1677251**

**WRITTEN RESOLUTIONS OF THE MEMBER OF THE COMPANY**

It was noted that on 24 June 2021, the Directors of the Company have recommended that the Member of the Company should resolve to place the Company into liquidation, pursuant to Sections 159(2) and 161 of the Insolvency Act 2003, and appoint Angela Barkhouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 149 Seafarers Way, George Town, Grand Cayman, Cayman Islands, Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom and Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG1110 to act as Joint Liquidators of the Company.

The following resolutions are passed as **RESOLUTIONS** of the voting member of the Company:

**THAT** consent is given that these resolutions may be passed as written resolutions without notice.

**THAT** it has been proved to the satisfaction of the member of the Company that the Company cannot, by reason of its liabilities, continue its business, and that the Company be placed into Liquidation.

The following resolution is passed as a **QUALIFYING RESOLUTION** of 75% or more of the voting members of the Company:

**THAT** pursuant to Section 159(2) of the Insolvency Act 2003 (as amended), Angela Barkhouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 149 Seafarers Way, George Town, Grand Cayman, Cayman Islands, Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom and Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG1110, be appointed as Joint Liquidators of the Company.


Amiruddin Bin Muhamed
Duly authorised Director
Dated this 2nd day of July 2021

*PRIVILEGED & CONFIDENTIAL*

**BRIGHT ORIANDE LIMITED (the "Company")**
**BC # 1861547**

## WRITTEN RESOLUTIONS OF THE MEMBER OF THE COMPANY

It was noted that on 24 June 2021, the Directors of the Company have recommended that the Member of the Company should resolve to place the Company into liquidation, pursuant to Sections 159(2) and 161 of the Insolvency Act 2003, and appoint Angela Barkhouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 149 Seafarers Way, George Town, Grand Cayman, Cayman Islands, Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom and Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG1110 to act as Joint Liquidators of the Company.

The following resolutions are passed as **RESOLUTIONS** of the voting member of the Company:

**THAT** consent is given that these resolutions may be passed as written resolutions without notice.

**THAT** it has been proved to the satisfaction of the member of the Company that the Company cannot, by reason of its liabilities, continue its business, and that the Company be placed into Liquidation.

The following resolution is passed as a **QUALIFYING RESOLUTION** of 75% or more of the voting members of the Company:

**THAT** pursuant to Section 159(2) of the Insolvency Act 2003 (as amended), Angela Barkhouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 149 Seafarers Way, George Town, Grand Cayman, Cayman Islands, Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom and Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG1110, be appointed as Joint Liquidators of the Company.

_____
Amiruddin Bin Muhamed
Duly authorised Director
Dated this 2 day of July 2021

*EXHIBIT "B"*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

SRC International (Malaysia) Limited                    Chapter 15

Debtor in a Foreign Proceeding.                    Case No.:  22-12656-RAM
_____/

In re:

Bright Oriande Limited                    Chapter 15

Debtor in a Foreign Proceeding.                    Case No.: 22-12655-RAM
_____/

In re:

SRC Strategic Resources Limited                    Chapter 15

Debtor in a Foreign Proceeding.                    Case No.: 22-12654-RAM
_____/

**DECLARATION OF ANDREW EMERY IN SUPPORT OF CHAPTER 15**
**PETITION FOR RECOGNITION OF A FOREIGN PROCEEDING**

I, Andrew Emery, hereby declare under penalty of perjury under the laws of the United

States as follows:

**BACKGROUND**

1.      I am a barrister duly admitted to practice in England, Wales and the British

Virgin Islands ("BVI").  I am a partner in the law firm of Emery Cooke.  Emery Cooke acts as

BVI counsel to Angela Barkhouse, Helen Janes, and Carl Jackson, the joint liquidators (the

"JLs" or "Foreign Representatives") of SRC International (Malaysia) Limited ("SRC-BVI"),

Bright Oriande Limited ("BOL") and SRC-Strategic Resources Limited ("SRC-Strategic")

(collectively, the "Debtors").

1

2.      I am over the age of 18 and I am duly authorized to make this declaration acting in my capacity as BVI counsel.  Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true.  Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information obtained through the joint liquidators' investigations and are true to the best of my knowledge, information, and belief.   If called upon, I could testify as to all matters set forth in this declaration.

3.      I am a member in good standing, of the Bar of England and Wales and the Bar of the BVI. I hold degrees in law from the Universities of Oxford and London. Since my qualification, my practice has focused on commercial litigation and insolvency. I have considerable experience in matters relating to BVI insolvency law and cross-border restructurings. I have advised companies, insolvency practitioners and creditors in respect of insolvency proceedings.

## STATEMENTS ON BVI LAW

4.      The laws of the BVI relating to insolvency are predominantly codified in the Insolvency Act 2003 (the "Insolvency Act"), which establishes a framework for controlled, court-supervised and collective reorganization and restructuring of obligations of distressed companies.  A BVI company may be put into liquidation by a members' resolution to appoint a liquidator or  appointed by an order of the BVI court.

5.      The liquidator is appointed under the Insolvency Act for the duration of liquidation proceedings and is authorized to administer the reorganization or liquidation of the company's assets and to act as a representative in relation to the liquidation proceedings. In respect of their appointments, liquidators are both officers of the court and agents of the company.  A liquidator is a fiduciary, and subject to the normal common law rules applicable to fiduciaries.  The liquidator(s) have the powers necessary to carry out the functions and duties

2

of a liquidator and these include a wide range of powers under section 185 and 186 of the Insolvency Act, and may apply to the BVI court at any time for directions.

6.     The purpose of a liquidation is to realize the assets of the company, declare a dividend for creditors if possible, and to return any surplus to the members.  It can be terminated when the liquidator(s), after completing their duties, prepare a final report together with a statement of realizations and distributions for the creditors and members.  Liquidation can also be terminated by the court, on an application by the liquidator, a creditor, director or member, if the court considers it is just and equitable to do so.  The final step after liquidation is the dissolution of the company, after which the company ceases to exist, and no one can then act on behalf of the company.  The debts and obligations of the company are totally extinguished.

### 28 U.S.C. § 1746 VERIFICATION

I, Andrew Emery, declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that I have the authority to make this Declaration; that I have read the foregoing Declaration; and that the facts and matters alleged and contained herein are true and correct to the best of my knowledge and belief, based upon my own personal knowledge of the facts involved and upon my review of the available documents pertaining to SRC-BVI, BOL, and SRC-Strategic.

Executed in the Fish Bay, Tortola, BVI on March 31, 2022

By: _____

Andrew Emery

*EXHIBIT "C"*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov


In re:

SRC Strategic Resources Limited                          Chapter 15

      Debtor in a Foreign Proceeding.          Case No.: 22-12654-RAM
_____/

In re:

Bright Oriande Limited                                   Chapter 15

      Debtor in a Foreign Proceeding.          Case No.: 22-12655-RAM
_____/

In re:

SRC International (Malaysia) Limited                      Chapter 15

      Debtor in a Foreign Proceeding.          Case No.:  22-12656-RAM
_____/

**ORDER GRANTING RECOGNITION OF FOREIGN
MAIN PROCEEDING PURSUANT TO §§ 1515 AND 1517 OF
THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF**

This matter came on for hearing on_____, 2022 ("Hearing"), upon the Petitions [D.E. 1] and *Motion for Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code* [D.E. 2] (the "Chapter 15 Petition") filed by Helen Janes, Angela Barkhouse, and Carl Jackson (collectively, the "JLs" "Foreign Representatives"), as the Joint Liquidators of SRC International Malaysia Limited ("SRC-BVI"), Bright Oriande Limited ("BOL") and SRC Strategic Resources Limited ("SRC-Strategic") (collectively, the "Debtors"). The Chapter 15 Petition seeks recognition and related relief, pursuant to Chapter 15 of the Bankruptcy Code, of the Debtors' voluntary liquidation proceeding pending in the British Virgin Islands (the "Liquidation").  The Court, having considered the Chapter 15 Petition, its attachments, the argument of counsel at the Hearing, and being otherwise duly informed, makes the following order.

The Court finds:

A.      Due and timely notice of the filing of the Chapter 15 Petition and the Hearing was given by the Foreign Representatives as directed by this Court.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C.      Venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1410.

D.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

E.      The JLs, Helen Janes, Angela Barkhouse, and Carl Jackson, qualify as a "foreign representatives" as defined in 11 U.S.C. §101(24).

F.      This Chapter 15 case was properly commenced pursuant to 11 U.S.C. §§ 1504, 1515 and 1517.

G.      The Foreign Representatives have met the requirements of 11 U.S.C. §§ 1515(b), 1515(c), 1515(d), and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

H.      The Liquidation is a foreign proceeding under 11 U.S.C. §§ 101(23) and 1502(4).

I.      The Liquidation is entitled to recognition by this Court under 11 U.S.C. § 1517.

J.      The Liquidation is pending before the British Virgin Islands ("BVI"). The Debtors' center of main interests is in the BVI and, accordingly, the Liquidation is a foreign main proceeding under 11 U.S.C. § 1502(4), entitled to recognition as a foreign main proceeding under 11 U.S.C. § 1517(b)(1).

K.      The Foreign Representatives are entitled to all relief provided under 11 U.S.C. § 1520.

L.      The Foreign Representatives are further entitled to the relief expressly set forth in 11 U.S.C. § 1521.

M.      The relief granted by this Order is necessary and appropriate, in the interests of public and international comity, consistent with the public policy of the United States, warranted pursuant to 11 U.S.C. § 1521 and will not cause any hardship to the creditors of the Debtors or other parties that is not outweighed by the benefits of the relief being granted.

N.      The Court finds that the interests of the creditors, interested entities, the Debtor, and the Debtors' estate are sufficiently protected by the rights and obligations under the Federal Rules of Bankruptcy Procedure and/or Federal Rules of Civil Procedure governing the taking of discovery.

Accordingly, it is **ORDERED** AND **ADJUDGED** that:

1.     The Liquidation is granted recognition as a "foreign main proceeding" under 11 U.S.C. § 1517.

2.     The Liquidation shall be given full force and effect and be binding on and enforceable in the United States against all persons and entities. Should the Liquidation become subject to the direct supervision of the British Virgin Islands Commercial Division ("BVI Court"), any orders of the BVI Court regarding the administration of the Liquidation shall be given full force and effect and be binding in the United States against all persons and entities.

3.     The Foreign Representatives shall have the authority to act independently to carry out any of the duties and powers granted by this Order.

4.     The provisions of 11 U.S.C. § 1520 apply to this proceeding, including but not limited to the automatic stay of 11 U.S.C. § 362 with respect to the Debtors or property of the Debtors in the United States.

5.     Under 11 U.S.C. § 1521(a)(1), all persons and entities are stayed from commencing or continuing any action or proceeding concerning the assets, rights, obligations or liabilities, of the Debtors or the Debtors' bankruptcy estate located in the United States.

6.     Under 11 U.S.C. §1521(a)(2), all persons and entities are stayed from executing against the assets of the Debtors or the Debtors' bankruptcy estate located in the United States.

7.     Under 11 U.S.C. §1521(a)(3), all persons and entities are prohibited from transferring, encumbering or otherwise disposing of, or exercising control over any assets of the Debtors or the Debtors' bankruptcy estate located in the United States.

8.     Under 11 U.S.C. §1521(a)(4), the Foreign Representatives are authorized to examine witnesses, take evidence or seek the delivery of information concerning the assets, affairs,

rights, obligations or liabilities of the Debtors or the Debtors' bankruptcy estate pursuant to §1521(a)(4) and the Federal Rules of Bankruptcy Procedure, including without limitation the procedure of Fed. R. Bankr. P. 2004 and Local Rule 2004-1, without further order of this Court.

9.      Under 11 U.S.C. §1521(a)(5), the Foreign Representatives are entrusted with the full administration and realization of all or a part of the estate and assets of the Debtors within the territorial jurisdiction of the United States.

10.     Under 11 U.S.C. §1521(a)(7), all persons and entities provided notice of this Order who are in possession, custody or control of property, or the proceeds thereof, of the Debtors or the Debtors' bankruptcy estate located within the territorial jurisdiction of the United States, shall immediately advise the Foreign Representatives by written notice sent to the following addresses:

Attn: Helen Janes
Hyperion Risk Solutions (BVI)
The Folio Building
Road Town, Tortola BVI, VG1110

Attn: Angela Barkhouse
10 Market St,  #1174 Camana Bay
Grand Cayman, Cayman Islands KY1-9006

Attn: Carl Jackson
Quantuma Advisory (UK)
Office D, Beresford House, Town Quay
Southampton SO14 2AQ, United Kingdom

With a copy to:
Attn: Gregory S. Grossman
Juan J. Mendoza
Jennifer Mosquera
Sequor Law, P.A.
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131

which written notice shall set forth: (i) the nature of such property or proceeds; (ii) when and how such property or proceeds came into the custody, possession or control of such person or entity;

and (iii) the full identity and contact information for such person or entity.  The Foreign Representatives shall file with the Court information demonstrating those persons and/or entities to whom they have provided notice of this Order.

11.    Under 11 U.S.C. § 1521(a)(7), other than a counterclaim to a suit brought by the JLs, no person or entity may commence suit against the JLs in any court, including this Court, in the United States without first obtaining leave of this Court.

12.    The Foreign Representatives are further authorized to operate and may exercise the powers of a trustee under, and to the extent provided by 11 U.S.C. §§ 363 and 552.

13.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) this Order shall be effective immediately and enforceable upon entry and shall constitute a final order within the meaning of 28 U.S.C. § 158(a); (ii) Foreign Representatives are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (iii) Foreign Representatives are authorized and empowered, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

14.    No action taken by Foreign Representatives in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of the Liquidation or any order entered in or in respect of the Chapter 15 case (including any adversary proceedings or contested matters) will be deemed to constitute a waiver of immunity afforded the Foreign Representatives, including pursuant to 11 U.S.C. §§ 306 and 1510.

15.    This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought

in and through this Chapter 15 case, and any request by any person or entity for relief from the provisions of this Order.

      16.    This Court shall retain jurisdiction with respect to the administration, realization, and distribution of the assets of the Debtors within the territorial jurisdiction of the United States.

<div align="center">###</div>

Submitted by:
Gregory S. Grossman, Esq.
Juan J. Mendoza, Esq.
Jennifer Mosquera,, Esq.
SEQUOR LAW, P.A.
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131
Phone: (305) 372-8282
Facsimile: (305) 372-8202
E-mail: ggrossman@sequorlaw.com
E-mail: jmendoza@sequorlaw.com
        jmosquera@sequorlaw.com

*(Juan J. Mendoza shall serve a copy of this Order on all parties entitled to service and file a certificate of service immediately thereafter.)*

F:\WDOX\CLIENTS\60165\1001\00343450.DOCX